Morning. Morning, Your Honor. May it please the Court. I'm Eric Leed and I represent Cell Therapeutics Inc. I'd like to reserve a couple minutes for rebuttal at the end if I could. This is an appeal from the District's Court granting of a Rule 12c motion for judgment on the pleadings. Distilled, the issue is if the government intervenes in a QUETOM action and promptly settles a False Claims Act claim against a party, is that party stripped of its otherwise enforceable legal rights, including claims for professional negligence and contractual indemnity provision, against the professionals who breached their professional obligations and gave bad advice and caused everything to float from that. This was an action brought in State Court asserting State Court causes of action. The Lash Group removed the case from State Court on diversity grounds. Eventually they moved for a 12c judgment on the pleadings and Judge Robart granted it. And at this time we're seeking that the case be reversed and remanded to the District Court so the case can be tried before a jury. Cell Therapeutics in 2000 was a small biotech company and they came out with a drug, their first approved drug, and they needed to launch it. And in doing so, there's some very technical issues regarding reimbursability under Medicare, and so they hired a professional, and they hired the Lash Group. The Lash Group entered into a contract with them, and I'd point the Court to Excerpt of Record, page 84, in which the contract states, because of the depth and breadth of our health care experience, we're able to assemble a team with unparalleled expertise in the financial counseling and reimbursement areas. So in other words, these experts said they knew what they were doing. In addition to those representations, there is an express negotiated indemnification provision whereby if they're negligent in the performance of their duties, CTI, Cell Therapeutics, has recourse against them to be reimbursed for any damages that flow from that. Can I just stop and try to get to the heart of the matter? Sure. I'm trying to imagine the trial, okay, so maybe you can help me out. And I'm trying to do it in the context of navigating between mortgages and MADN. Okay, so we don't have a QI-TAM case that's going to trial here, because that case has been settled, correct? Correct. So let's just say under MADN, if the case had gone to trial and your client had been determined not to have violated the False Claims Act, then it potentially would have had counterclaims or other claims still standing against LASH, correct? Correct. But if your client had been determined to have violated it, game over, correct? You know, I think it would be a very fact-specific situation, because you're looking at two parties here. I mean, you're going to get in this area with equitable analyses. That's what MADN said. I mean, if you have any kind of liability on the False Claims Act, then you can't counterclaim, right? Well, I think that's correct. I was thinking about this when I was sitting back here. If you have LASH and you have CTI, and they're both in court and they're both found to have done terrible things, then the question for the court would be under those circumstances, are you really going to let a party enforce an indemnification provision? And I think probably not based on the equities in those circumstances. You know, LASH wasn't in the False Claims case. LASH was, Your Honor. But not at the time. They didn't settle when you settled. Well, they were still in it after us. They settled later. Right. So they would have been in the case. They would have been in the trial, unless they settled. So now we have a situation where there is no False Claims Act case, correct? Correct. The government's gone, the relator's gone, and there's just these two private parties. So is your indemnification is based on what you paid in the False Claims Act case predicated on your contractual indemnification. Is that correct? No. Okay. Actually, if I could address what the damages are. Maybe the answer is, in part, yes. I mean, you have more than one claim. Well, I answered the question that way because she asked about the contractual right of indemnification. There's a different cause of action for professional negligence. We understand. You feel you have claims bigger than the QTAM. Correct. But the question I have is, if the claims that arose out of the QTAM and that settlement, in your view, you still have a right to recover against LASH for those claims, correct? Correct. And is that on a theory separate and apart from the liability, the alleged liability in the False Claims Act which you settled without an admission of liability? In other words, see, it's hard to untangle. You have a professional negligence claim saying, okay, you misadvised us on this, and our damages are what? The amount we paid in the QTAM action?  The damages, if you look at the complaint, Paragraph 4 is a very broad claim for damages. And, of course, there's the catch-all at the end, like all lawyers put in the prayer for relief, other relief. And all the cause of action makes some pleadings for damages, and they reallege the allegations in the prior paragraphs. But the damages, if you break it down, which I did in the complaint, are you have a claim that they got bad advice. Based on the bad advice, they made business judgments. They invested funds to pursue this drug. Had they received good advice, they would not have spent that money. They would have pursued other options, and there's an economic analysis that can show. Okay, so that's their business expense damages, we'll call it. That's correct. And there's a claim for damage to reputation. Okay. Increased cost of capital. Deprived of the nature of services for which it contracted. In other words, the money you paid for the services. Expenses and legal fees in having to investigate and respond to the QTAM action. Okay, so that one is directly tied to the defense of the QTAM action. Correct. Okay. And attorney's fees in having to go after the last group for these claims. So those are the damages that are in the case. So you're not asking to recover the settlement amount. That's a component, Your Honor. Okay, where does that come in, the damages you just listed? Well, I guess I didn't get to it, but it is in addition to the other ones that I mentioned. And that's an indemnity in effect. That's indemnify us for what we paid out in settlement. Correct, Your Honor. Now, there's an important point on there if you're going to hone in on that component, and that is that the cases, to the extent that they have come about to bar claims, have been in a situation where the indemnity claims arise only if there's liability on the merits. And in a false claims act, there's a high mens rea standard. There's knowingly making false statements or reckless disregard. So under those circumstances, if you're going to do the analysis, it's quite a heightened level of wrongdoing that's already there, which doesn't exist in a settlement. I mean, to allow it in a settlement would be pretty much saying, we're going to assume that you were guilty, and that's never been proven. Okay, so now this gets really what I'm trying to start at. I know there's all these other damages that you claim are independent of the indemnity for the false claim. Okay, now my question is, to recover on your claim for indemnity, is that based on the contract? Or is it based also just on a common law indemnity because we had to pay out these damages, which we think we wouldn't have to pay if you guys had done your job? By indemnity, you're referring to the payout in the settlement? Yes. Yes, that we think is a component of the professional negligence claim also. Okay, but is it based on contract, or is it based on something else? It's based on professional negligence, tort theory, and it's based on a contractual indemnity provision. And in that case, how do you see, if you were to proceed with that case as a civil claim, how do you see the elements of a false claim act claim playing into that, if at all? I think it will be in the context of a civil action with the affirmative defenses that have been raised. You've got unclean hands, estoppel, those types of theories. So once the evidence comes out by both sides as far as who did what and who was responsible for what, there's going to be some affirmative defenses that they seek to bar what otherwise would be clearly recoverable damages under contract or tort theories. Well, I think that it's fairly well established that if you were in the same case with them and it went to trial and you were found liable for any part of a false claim, you couldn't recover back against them. So my question is, as a practical matter, does this require LASH to show an effect that you violated the False Claims Act in order for it to have a defense? It would have to make a showing that would be comparable in terms of wrongdoing by CTI that would bar it under those circumstances. Now, I think that if you establish the goal line as being found liable, you've proved quite a lot. You've proved the either intentional wrongful act or wrongful representation or reckless disregard. Now, whether under the civil defenses that are here, unclean hands, you have to go that far to defend against it, maybe not. But I think that the cases that are there to the extent that they bar it say you've already established. The reason I asked you what your theory was is that, in effect, you're saying you don't have to prove that you didn't violate it. That is the False Claims Act. You don't believe that would be your burden, is that correct? I don't think it would, Your Honor. I think the cases that are there take a situation where that's already been established and say under those circumstances we're not going to allow it. Well, we don't have that case here. Correct. And so, I mean, you can't just sort of come in and say we have all those claims. I'm really trying to actually understand what case would shake out of this. Because I think, for example, the Madden court, I guess it is. You can take all this language, but it certainly didn't contemplate this situation. No. So I'm just trying to understand. In your view, you wouldn't have to affirmatively show that you did not violate the False Claims Act. It's not our burden. And in Madden, there's great language there. They say that the decision in mortgages is designed to pretend ketam defendants from offsetting their liability. Counterclaims for indemnification or contribution by definition only have the effect of offsetting liability. Counterclaims for independent damages, which we claim, the case law shows independent means when there's no finding of liability under the False Claims Act. Counsel, does that mean that under your theory of the case, that you could recover more than the settlement that you paid to the government on the ketam action? Our damages are significantly more than what we have to pay on settlement. And your alleged business investment and all the other. Correct. And litigation expenses, all of that. You want to save a couple of minutes? I will. Thank you, Your Honor. You have about two and a half. Okay. Thank you for your argument. Mr. Cardozo. Thank you, Judge Hawkins. May it please the Court, Ray Cardozo for last group. And I want to start with Judge McCune's questions, because she has put her finger on the heart of the matter here. Madden found curtailed mortgages and found that counterclaims can proceed based upon the assumption that there would be a finding of liability that would eliminate any risk that the False Claims Act defendant would be using the counterclaims to offset its false claims liability. That was the assumption that was in play in Madden and the rationale behind deferring the counterclaims. The settlement introduces a different problem here because there won't be, there isn't an adjudication of non-liability. There's no prior action. So we're back to the question of does the settlement, is there a risk of offsetting liability if we permit the claim to go forward in a situation where the defendant has settled? And there clearly is a very troubling risk, as the facts of this case show. What if you're given, and let's assume this action is allowed to go forward, and you're allowed to fully and completely defend, as I assume you would, on the theory that CTI in fact violated the False Claims Act? And if, under the rules of that proceeding, if you're able to establish that schools out for them. Does that change the equation? That mitigates the risk, but it also highlights why that type of trial should not be allowed and why this judgment should be affirmed. Under that scenario, we have a case where the government investigated the action against both CTI and Lash, chose to intervene against CTI alone. They're the target of the investigation. The government has charged them with egregious personal wrongdoing. They can quickly settle, take all risk of trouble damages, all risk of the real teeth of an FCA case out of the equation, and then turn around and try the case that they could have had before the government but would come attendant with False Claims Act penalties if they lost. They can try a watered-down version against Lash, and the sting of the False Claims Act is never felt if they lose. If they lose and they're found to have violated the act, their worst-case scenario is their settlement. That's the end run. The difficulty is that if we take your line of thinking, is it would really inhibit settlement in many cases. We all know that there's clients who settle feeling like they just want to stem the potential tied cabin risk. They don't think they're liable, et cetera, so they settle. But it would really force a trial to determine non-liability to be able to go back for what, I don't know, attorney's fees maybe against a potential counterclaim defendant. That seems to me the difficulty with your theory. I'm just wondering if there's something in between. You're basically saying, look, we don't want to have a retrial. Without the government, we shouldn't have to retry the false claims case. What do you say about the contractual indemnity provision? Well, there are a couple of things in those comments, and I'll take them in turn. The reason why we don't want to have a retrial without the government present is it sets up the perfect scenario to end run this act, because you can avoid the penalties of the act and be found liable. But that's just a general consequence of settlement. I mean, that could be said about any settlement, that whoever is settling the case has now avoided the consequences of the tort, the criminal penalty, whatever. But the rationale for mortgages and then Madden was we have a carefully calibrated scheme that's designed to deter. And now we're permitting a way to come – But the government has cut its risk there as well. I mean, there was evidently some risk that the government saw in its case, the risk of losing and not recovering a thing. So the government has covered its risk. But it seems to me that your argument – you're really arguing for sort of mortgages without Madden. That is, you just want a flat rule that if you have been found liable or have settled and paid anything to the government, then you are barred from bringing any action against a co-defendant. No, I would say something less than that. Because the defendant has the option to settle or not settle – this is a voluntary settlement – it can either insist upon a provision in the agreement exonerating it of FCA liability and allocating the settlement to the non-FCA claims, or it can go to trial if it wants to preserve the indemnity rights. But because it's just too easy for a defendant accused of wrongdoing, once you're willing to put some money on the table, the government will obviously take it. It doesn't have that same concern. And the end run on the scheme is too easy under the rule where the defendant, who has the voluntary ability to settle or not settle, has the ability to control the whole game as their rule. One reason that isn't true is that in many of these FCA claims, there's debarment problems. So I don't know if that's an issue here. I'm sorry, I didn't hear what you said. What problems? There's debarment in terms of being a government contractor going forward. And so you don't necessarily get off, so to speak, scot-free in this situation. You're kind of stuck potentially with a thumb on the scale in terms of your government contracting, which is in some cases people's entire business. So if you don't really get off completely, all you're doing is saying, well, the government made its deal. Now I want to see if my partner or co-defendant or whatever, I want to see if, in fact, they should be liable, not me. And then you just have, why isn't it just two private parties then basically duking it out in court? The reason for that is because the potential for manipulation in this process, and it sets up just an easy way to avoid. Okay, so that's a policy reason, right? Correct. So now we're a little bit constrained because we're not supposed to be making policy. We just kind of look at the statute. So what is your best legal support for that policy argument? I would say three things. First of all, you don't have to make that policy. I think mortgages and MADN have done it for you already. They've already established a rule barring state law claims. The issue in mortgages, claims were asserted for breach of contract, breach of the implied covenant of fair dealing, negligence, exactly the same claims we have here. And the court said because of this policy, noting the policy of deterrence, the court went and barred those claims. So you're not, you don't have to. Can I just add on that? I read that to say that really those claims were so coextensive with the false claims that there was no distinction. So here, let me just ask you this. If they were permitted to go forward on the professional negligence claim and say that your client basically led them down the garden path and gave them the wrong advice, and they built a new factory or engaged in some additional research or whatever, why isn't that a claim independent from the billing claim? Because that isn't the claim they've alleged. The professional negligence claim seeks to recover the False Claims Act settlement. That, their theory is. Is it limited? Is it limited to the amount recovered under the False Claims Act? It is tied or premised upon the identical conduct. There is some language that says including without limitation. The settlement is zeroed in as the item of damages. It's seeking to recover on that claim. And the conduct, the conduct is identical to the conduct at issue in the False Claims Act case. In Judge McEwen's hypothetical and in many of the cases, there are allegations of conduct that are distinct from the conduct that's involved in the False Claims Act case. The case Madden relied on, which is a case called Birch, there was an express statement in the opinion that the allegations, they were alleging different billing problems than the ones that were issued in the False Claims Act case. So a distinction could be drawn. In cases where it's the exact same conduct, this risk of offsetting liability comes squarely into play. And that's why Mortgage has said we're not going to play this game at all. The claims are gone because of the effect they would have. The effect is to indemnify. And that's certainly true here. But then here you have the complication of a settlement. And typically in a settlement, you wouldn't have collateral estoppel as to issues because there's been no adjudication as to those issues. And if we were to adopt your position, wouldn't we in effect be saying that we're giving collateral estoppel effect to that settlement vis-à-vis the issues of their claims? I don't think you have to go there. There's an important distinction you can draw. Because this rule is simply based upon the effect that allowing the claim would have on the FCA liability, and you could simply base the decision upon the fact that in the settlement context, the defendant controls that one. It's a voluntary election. So they have the choice. They can settle and secure an explicit provision exonerating them of FCA liability or structure the settlement in a way that there's no FCA liability embraced at all within the terms of the agreement. Or they can go forward. Have you ever seen the government settle a Fault Claims Act claim that basically exonerates the CWCAM defendant of liability? Do you know of any? I can't say that I do, but I can't say that if... It would be probably a blue moon for the government. Well, if that were a condition of the settlement. And if it were... You see, if it were a condition of the settlement, and the government is drawing the line and says, we're not going to give you that condition, that should tell you something right there, too. In other words, if the government is unwilling to characterize the settlement as premised on the non-FCA claims, when it's being paid, it has achieved its immediate objective. If despite being paid and receiving its immediate objective, the government is unwilling to put in what would be in private practice, in ordinary recital, to get the deal done. What if the party settled and the settlement said, for unjust enrichment and negligent misrepresentation, which are the non-FCA claims here, we settled for $10 million, and on the FCA claim we settled for $1. That bars everything else? A $1 admission, an FCA claim, the tail that wags the whole dog? No, but you've got the critical ingredient that's missing here, which is an allocation. Without that allocation... Without that allocation here, which means we're left wondering what the party's had in mind here. I think an allocation requirement, a requirement of the condition of the settlement, these are important conditions on the claim because... But you would still have then a False Claims Act settlement, wouldn't you, in that case? It would be $1 on an overall settlement of $10 million. So $10 million and $1. Now, I want to know, does that then bar a suit of this kind? Because there has been an admission of a $1... No, it would bar a suit for the dollar. It wouldn't bar a suit for the $10 million unless Lash could show there was some collusion between the governments. Wait a minute. I didn't think that the question of offset was the critical component here. Are you conceding then that the CTI can bring a suit against you as long as they have damages in excess of their settlement against the government? You just told me that they can sue for everything over a dollar, so are you just conceding that they can bring a suit as long as their claims add up to more than the amount which they settled with the government? No, I'm saying if they have a settlement... Then a dollar settlement on an FCA claim would bar, would necessarily bar any subsequent suit by the party that settled with the government, wouldn't it? I'm saying if you have some explicit allocation in the settlement agreement that permits or a finding of non-liability under the FCA, you have something that permits you to say that this settlement is not based on FCA liability. That is the crucial protection against manipulation that you need to preserve the statutory scheme. In effect, they have that because they're saying that payment of this money is not predicated on an admission of liability. That's what they put in their settlement agreement. They put that in there, but they're... The government signed it. Right, and that's... Let me just, if I could just answer this final question. You can answer it, and then I have one. Okay. That shows that if they were able to achieve the government's blessing that there is no FCA liability in this settlement, it could have been in the agreement. That isn't what the agreement said. They said we don't admit anything. My argument is that it seems like a great theoretical argument, but the whole premise apart from Federal False Claims Act settlements always is that people don't admit liability. I mean, they settle so they don't have to have that final determination. So if we were to accept your argument, I worry that we've somehow, you know, we've rejiggered the practical world of why and how lawsuits... But if you don't accept it, you're rejiggering the practical world of False Claims Act litigation. Because remember, the government targeted CTI, not Lash, and out-of-the-box settlements... There's a lot of reasons that the government decides to intervene or not intervene because the relator still gets to go ahead. That doesn't mean the government might think it has a better case against them than it did against you guys. But you're still on the hook for a false claims case, correct, even though the government didn't intervene? Yes, but a quick settlement takes the government's case out of play, and then you can try the case without the deterrent objective of the FCA. Could I just ask you another question? Sure. I owe Judge Hawkins a question too, so... We got all morning. Let's say you weren't a defendant in the false claims case, but you're just hanging out there as having had these contractual dealings. They settle their false claims case, and then they come after you. Do you think it matters one way or the other whether the person they come after was in the false claims case or not? I actually don't. I mean, that's the kind of distinction without a difference that would treat similarly situated people differently. But you have reminded me of an important analogy in the precedence. Both in mortgages and in almost all of these district court cases, the fact of the defendant's FCA liability wasn't established. The counterclaims were thrown out before there had been any adjudication, and that's the most closely analogous problem to the settlement. And then in the two cases that involve settlements, the Hart Doctors case and the 11th Circuit's Israel Bank case, both of those cases went in the direction of barring the cause of action also. None go in the last direction because of the obvious problems that would arise if you go there. Okay, I'm done. Here's my question. You settled, your client settled with the realtor? Yes. Let's suppose your client had settled with the government, and that CTI had also. And that CTI, for whatever reason, decided it didn't want to involve itself in this anymore. But they had not paid about half of your client's professional fees, and your client brought an action for those fees. Could they bar your suit based on your settlement? Well, we'd get into that question of whether that's distinct. Yes or no? I'm going to say yes. And you're comfortable with that? Yes. Okay. Thank you. Do you want to tell her why? The reason why is because it's the same policy. It's easy to call UOS our fees. It's easy to repackage claims for indemnity under another cause of action. If we could show it was distinct under Madden, we'd be fine. But I think that threshold element of showing it's distinct. So you've got something completely separate from the KTAM allegations themselves. That is, they have not paid you, say, half a million dollars in fees, your client, yet you can stop that suit by saying you settled with the government. Well, you just added the important fact that permits the suit to go forward. It's completely separate. It's not the same conduct. Okay. All right. Thank you. Counsel, rebuttal? Thank you, Your Honor. A number of points were raised there. I think the answer to the last question, why he said yes, is because he had to say yes to that question. A couple things I wanted to correct here. Mr. Cardozo said that some of these cases were not premised on a – did not involve a finding of liability under the False Claims Act, but they were premised on a finding of liability. In other words, although liability had not been established, the counterclaims were of a nature that they were contingent. So the counterclaim said, if liability is established, we want indemnification. So to that extent, they were premised on liability. What would happen if the ruling were, you can't get indemnification for what you paid in a government settlement, but to the extent you have other damages, you can go forward that way? Well, that's a huge leap that you're taking for the reasons that you've articulated in your questions about. There's all sorts of reasons parties settle cases, and wouldn't this be a deterrent on settlements? So the law has – What if that's the result, but where does that leave you in your claims? Well, there would be other damages, the other damages that I enumerated, which – and I also have to clarify, if you look at the complaint, it's that simple to do. There are allegations of damages that are not dependent upon these false claims acts. Paragraph 4 of the complaint is a very broad one. The prayer also is very broad. So I think that I disagree with opposing counsel on that. A couple other points. You're probably already aware of this, but this case doesn't involve a relator, and there's all sorts of policy considerations in those cases that come up in that context. The courts often talk about their concern about interfering with the government's ability to recoup. That consideration's not here. The deterrent effect on a relator coming forward, that consideration's not here. Also, there were some points raised about the settlement, and I draw the court's attention to page 27 of the excerpt of record, which is a portion of the settlement agreement, and you're right. I couldn't imagine the government in a settlement agreement saying that there's no basis for the claims and then accepting compensation for settlement of them. But this settlement agreement does the most that any such settlement agreement could do. In the recitals in H, it says that CTI denies each and every one of the allegations. Recital I says that our whole position here, which is that CTI contends that to the extent any false or misleading statements were made by CTI or its agents pertaining to the availability of Medicare reimbursement for Tricinox, such statements were as a consequence of negligent advice by the Lash Group. And J, whereas to avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the parties have reached a full settlement. Those are the kinds of considerations, separate from liability or fault, that cause parties to settle cases. The other thing I'd point out is the Madden case. The Madden case specifically says that we conclude that denying a KETAM defendant recourse to damage is offends procedural due process. And I think that's an important consideration there. Just a couple last points here. What if there had been no KETAM action? Clearly, CTI would have been able to pursue its breach of contract and professional negligence claim. What if the KETAM action had gone to trial and no liability had been found? Clearly, they'd be entitled to do it. What if the government changed its mind and dropped the claims after asserting it? Same situation. So we would just submit that the mere fact that there's a settlement, it goes back to the question of if there had been no finding or the impact. I think collateral estoppel is a good analogy because if there's a finding of fault under the False Claims Act, basically that party has had its day in court, and it has a collateral estoppel-type impact. It's been established that you've done all these things wrong, and under those circumstances you should not be able to recover. In a settlement, none of that's been established,  I think we've let you go over just about as much as your opponent. Thank you both for your arguments today. It's a very interesting case, and it's now submitted for decision, and the court will stand in recess for the day. Thank you, Your Honor. We appreciate it. All rise.
judges: Hawkins, McKeown, Bybee